UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| POLO BUILDERS, | ) | No. 04 B 23758 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DAVID R. BROWN, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 A 4032 |
| | ) | |
| REAL ESTATE RESOURCE MANAGEMENT, LLC; BHARAT KOTHARI; and VASILE SAVA, | ) ) ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Real Estate Resource Management, LLC ("RERM") entered into an agreement with David R. Brown, trustee in this chapter 7 bankruptcy, to purchase Polo Tower, an apartment building in Chicago, Illinois. The purchase agreement required RERM to pay a deposit on the purchase. RERM failed to pay the deposit. After promises from RERM that the money was on its way turned out to be false, Brown gave up and sold Polo Tower to someone else on different terms.

Brown then filed the complaint in this adversary proceeding against RERM and its members, Bharat Kothari and Vasile Sava. Count I of the complaint is a breach of contract claim against RERM. Count II alleges that RERM was Kothari's alter ego and seeks to hold him liable

for RERM's breach.[1] Count III alleges a similar alter ego claim against Sava. Count IV is a fraud claim against RERM and Kothari.

Brown now moves for partial summary judgment on his breach of contract and alter ego claims. In support of his motion, Brown duly filed the statement of material facts required under Local Rule 7056-1. RERM, Kothari, and Sava did not respond to the motion. For the reasons discussed below, Brown's motion for summary judgment will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). Adjudication of a state law claim arising out of a contract that a trustee entered into post-petition with court approval is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *See Ben Cooper, Inc. v. The Ins. Co. of the State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400 (2nd Cir. 1990); *Umbreit v. Stump, Harvey & Cook, Inc. (In re Baltimore Motor Coach Co.)*, 103 B.R. 103, 105-06 (D. Md. 1989) (holding that chapter 7 trustee's claim against insurers for post-petition breach of contract was core); *Meininger v. Swasey (In re Sarasota Casual, Inc.)*, 90 B.R. 496, 498 (Bankr. M.D. Fla. 1988) (holding that chapter 7 trustee's action for breach of post-petition contract was core).

### 2. Facts

The following facts are undisputed.[2] Hasan Merchant is an Illinois real estate developer

---

[1] Counts II and III, the alter ego claims, are not actually claims for relief and did not have to be pled as counts. An alter ego theory is a form of remedy, not a theory of liability. *Conseco, Inc. v. Schwartz (In re Conseco, Inc.)*, 330 B.R. 673, 685 (Bankr. N.D. Ill. 2005).

[2] Because RERM, Kothari, and Sava failed to respond to Brown's statement of facts, all of the facts in his statement are deemed admitted. *See* L.R. 7056-2(B); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

who did business through several entities, including Polo Builders, Inc. and MG International, LLC. Merchant and his wife, Sherri, also owned M&MM Enterprises, LLC, another entity that developed real estate. One of the entities (it is unclear which one, but it makes no difference) owned an apartment building, Polo Tower, located at 4180 North Marine Drive in Chicago.

On June 23, 2004, Hasan, Sherri, Polo Builders, and M&MM filed for relief under chapter 11 of the Bankruptcy Code. MG (collectively with the other debtors, "Polo Builders") followed suit on June 29, 2004. All of the cases were converted to cases under chapter 7 on August 16, 2004, and David Brown was appointed trustee. On September 16, 2004, Brown sought and received permission of the bankruptcy court to sell the estate's interest in Polo Tower. Under the order, the sale was to take place via auction.

Real Estate Resource Management, a limited liability company, was created in July 2004 to be a broker for the sale of condominium units. Two Illinois businessmen, Bharat Kothari and Vasile Sava were RERM's members.

On October 16, 2004, RERM entered into an agreement with Brown to purchase Polo Tower for $16,600,000. The purchase agreement required RERM to pay $833,000 as earnest money, but this sum was not due until fifteen days after Brown notified RERM that it was the winner of the auction. The purchase agreement also contained a liquidated damages clause. It provided that "if Purchaser fails to perform in accordance with the terms of this Agreement, at Seller's option, Seller may elect to terminate the Agreement, and receive the Earnest Money as liquidated damages as its sole and exclusive remedy." The purchase agreement nowhere explicitly provided for any other remedy. The purchase agreement was governed by Illinois law.

Brown's agent for the transaction, Ron Douglass, drafted the agreement and came up with the $833,000 figure. Douglass states in an affidavit that he set liquidated damages at five percent

-3-

of the purchase price. In arriving at that amount, he considered various costs associated with the building, costs that were increasing daily and would continue to increase if the deal did not close: penalty interest on outstanding loans for Polo Tower, bills for Polo Tower's ongoing facade work, real estate taxes, and legal and other professional fees. He believed that the estate would incur "significant damages" if the closing were delayed or if Brown had to sell Polo Tower to a replacement buyer.

On October 16, 2004, the same day the parties executed the purchase agreement, Brown notified RERM that it had won the auction. Thereafter, Brown performed all of his obligations under the purchase agreement and was ready, willing, and able to close the deal. On behalf of RERM, Kothari tendered a deposit check to Brown for the earnest money. But he told Brown not to deposit the check because there were insufficient funds in the account to cover it. Instead, Kothari promised that he would wire Brown the money. Kothari failed to make good on his promise. Despite further promises of this kind, RERM never paid Brown the earnest money.

The record on summary judgment says nothing about what happened after the deal fell through: whether Brown was able to sell the building to someone else, and what the terms of any such sale might have been. In his affidavit, Douglass estimates Brown's actual damages as a result of the failed deal to be at least several hundred thousands of dollars. But Douglass offers no basis for his estimate and admits he has not calculated the specific damages he says Brown incurred.

### 3. Discussion

On this record, Brown's motion for summary judgment must be denied. Undisputed though they are, the facts fail to establish liability for breach of contract. Since Brown is not

entitled to summary judgment on the claim in Count I, there is no reason to address the alter ego claims in Counts II and III. Summary judgment must be denied on those claims as well.

### a. Summary Judgment

The summary judgment standard under Rule 56 is familiar: summary judgment may be entered when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable by Fed. R. Bankr. R. 7056); *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). On a motion for summary judgment, then, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted).

Brown's motion for partial summary judgment here is unopposed because RERM failed to respond. "However, a nonmovant's failure to respond to a summary judgment motion . . . does not, of course, automatically result in judgment for the movant." *Raymond*, 442 F.3d at 608. "The ultimate burden of persuasion remains with [Brown] to show that [he] is entitled to judgment as a matter of law." *Raymond*, 442 F.3d at 608; *see also Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996). Brown must still make out a prima facie case for each element of his breach of contract claim. *See Celotex v. Catrett*, 477 U.S. 317, 330 (1986). If he fails to do so, summary judgment, though unopposed, must be denied.

### b. Breach of Contract

Brown has not made out a prima facie case on his breach of contract claim. Although the evidence certainly shows that RERM breached the agreement to purchase Polo Tower, no

-5-

evidence shows that Brown was injured as a result.

Under Illinois law, "[t]o recover for the breach of a contract, a party must establish the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 356 Ill. App. 3d 590, 600, 826 N.E. 2d 430, 439 (1st Dist. 2005) (internal quotations omitted); *see also Burrell v. City of Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004) (Illinois law). Injury is an essential element. If a plaintiff fails to prove an injury, he cannot prevail on his breach of contract claim. *Krislov v. Aetna Plywood, Inc.*, No. 99 C 5531, 1999 WL 1251530, at *4 (N.D. Ill. Dec. 20, 1999).

Brown has certainly adduced evidence establishing three of these elements. The purchase agreement appears to be valid and enforceable, and RERM has never claimed otherwise. Brown also performed his obligations under the purchase agreement: he was ready, willing, and able to close the transaction. And RERM undeniably breached the agreement when it failed to tender the earnest money and was unable to close.

Brown's motion for summary judgment fails, however, on the last element. Brown offers no admissible evidence that he was injured as a result of the breach. No evidence explains what happened after the transaction failed to close – whether Brown sold Polo Tower to someone else, for example, and if he did whether he ended up financially worse off. For all the record shows, Brown ultimately sold Polo Tower on *better* terms than RERM offered. All Brown supplies in the way of evidence is the Douglass affidavit, in which Douglass estimates "damages" from the breach to be at least several hundreds of thousands of dollars. But there is a difference between damages and injury, and although Douglass asserts Brown has damages, he never explains what injury produced them. No reasonable finder of fact could infer an injury from Douglass's

assertions.[3]

Because Brown has produced no evidence of injury from the breach, he has not made out a prima facie case on his breach of contract claim in Count I. His motion for summary judgment on that count must be denied.

### c. Liquidated Damages

Had Brown made out a prima facie case on Count I, summary judgment could only have been entered on liability. No damages award would have been possible. Brown asks the court to award damages under the liquidated damages clause in the purchase agreement. But the liquidated damages clause Brown invokes is unenforceable.[4]

Enforceability of a liquidated damages clause depends on whether the clause was meant to liquidate damages or impose a penalty. *Grossinger Motorcorp, Inc. v. American Nat. Bank &*

---

[3] The pleadings do not solve the problem. Brown's amended complaint alleges only that there was a substitute buyer and that the sale terms with the substitute buyer "differed materially" from the terms of the RERM deal, not that they were materially *worse*. (Compl. at ¶ 36). In any case, RERM answered that it lacked sufficient knowledge to form a belief as to the truth of the falsity of the allegation, effectively denying the allegation and putting Brown to his proof. *See* Fed. R. Civ. P. 8(b) (made applicable by Fed. R. Bankr. P. 7008(a)). In his summary judgment memorandum, Brown does assert that he was "forced to find a substitute purchaser for Polo Tower whose purchase price after adjustments appears to be substantially less than the purchase price under the contract with RERM." (Brown Mem. at 5 n.1). But statements in briefs are not evidence. *Glass v. Rodriguez*, 417 F. Supp. 2d 943, 944 (N.D. Ill. 2006).

[4] The unenforceability of a liquidated damages clause is an affirmative defense on which the defendant normally has the burden of proof. *XCO Int'l Inc. v. Pacific Scientific Co.*, 369 F.3d 998, 1003 (7th Cir. 2004). Here, RERM raised the defense in its answer but, having failed to respond to summary judgment motion, naturally adduced no evidence to support it. Nevertheless, trial courts have "the power sua sponte to raise the issue whether the relief sought . . . constitute[s] a penalty rather than liquidated damages." *Heller Fin., Inc. v. Burry*, 633 F. Supp. 706, 707 (N.D. Ill. 1986); *see also Roe v. Roe*, 352 Ill. App. 3d 1155, 1160, 817 N.E.2d 544, 548 (2d Dist. 2004); *M.I.G. Investments, Inc. v. Marsala*, 92 Ill. App. 3d 400, 405, 414 N.E.2d 1381, 1385 (2d Dist. 1981) (finding no error in "*sua sponte* raising the enforceability of the liquidated damages clause, and secondly, in failing to award damages pursuant thereto").

*Trust Co.*, 240 Ill. App. 3d 737, 749, 607 N.E.2d 1337, 1345 (1st Dist. 1992); *In re AE Hotel Venture*, 321 B.R. 209, 220 (Bankr. N.D. Ill. 2005). A liquidated damages clause will be enforced; a penalty will not. *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 314, 662 N.E.2d 602, 609 (1st Dist. 1996). A contractual provision that sets "unreasonably large liquidated damages" is an "unenforceable penalty, violating public policy." *Id.*

Under Illinois law, a liquidated damages clause will be upheld only if "(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." *Leahy Realty Corp. v. American Snack Foods Corp.*, 253 Ill. App. 3d 233, 244, 625 N.E.2d 956, 964 (2d Dist. 1993); *see also Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir. 1985); *Grossinger*, 240 Ill. App. 3d at 749, 607 N.E.2d at 1345-46. Close cases are resolved in favor of finding the disputed clause a penalty. *Lake River*, 769 F.2d at 1290.

The liquidated damages clause here is a penalty for two reasons. First, the clause specifies the same damages amount – $833,000 – no matter how severe the breach. Had RERM deposited $70 or $700,000, had RERM been a day late or a year late in making the deposit, Brown would still have been entitled to $833,000. A liquidated damages clause that awards the same amount regardless of the type or severity of the breach by definition is not a reasonable effort to forecast damages. *See Energy Plus Consulting, LLC v. Illinois Fuel Co., LLC*, 371 F.3d 907, 909 (7th Cir. 2004); *Lake River*, 769 F.2d at 1290.

Second, even if the $833,000 figure had been a reasonable forecast of damages, the clause would be invalid because it allows Brown the option of pursuing either liquidated damages or

-8-

some other remedy. The clause states: "if Purchaser fails to perform in accordance with the terms of this Agreement, *at Seller's option*, Seller may elect to terminate this Agreement, and receive the Earnest Money as liquidated damages as its sole and exclusive remedy." (Emphasis added). Under this language, Brown could choose between liquidated damages or a different remedy, presumably actual damages. *See Resource Tech. Corp. v. Congress Dev. Co.*, No. 03 C 2254, 2003 WL 22057489, at *4 (N.D. Ill. Sept. 4, 2003) (finding clause of this type was meant to preserve remedy of actual damages); *M.L.G. Trust v. Government of the Republic of Indonesia*, No. 89 C 6649, 1994 WL 549078, at *2 (N.D. Ill. Oct. 3, 1994) (same).

A liquidated damages clause that grants the non-breaching party the option of liquidated damages or actual damages is invalid because the option's existence "shows that [the] parties did not agree in advance to the amount of damages that might arise from a breach." *Resource Tech.*, 2003 WL 22057489, at *5; *see Catholic Charities of Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 313, 741 N.E.2d 651, 657 (1st Dist. 2000). The seller instead has the choice of either penalizing the buyer by accepting liquidated damages when those damages exceed actual damages, or of seeking actual damages when liquidated damages prove insufficient. *Catholic Charities*, 318 Ill. App. 3d at 312, 741 N.E.2d at 657; *Grossinger*, 240 Ill. App. 3d at 751-52, 607 N.E.2d at 1347. A clause of this kind "permits the [seller] to have his cake and eat it too." *Grossinger*, 240 Ill. App. 3d at 751, 607 N.E.2d at 1347 (internal quotation omitted).

Because the liquidated damages clause here (1) awards the same damages no matter how severe RERM's breach, and (2) allows Brown the option of accepting liquidated damages or pursue other remedies, the clause is invalid. It would have supplied no basis for awarding damages even if Brown had made a *prima facie* case on his breach of contract claim.

Although Brown has had no occasion on the current motion to address the validity of the

-9-

liquidation damages clause, he has addressed it in this adversary proceeding in the past.[5] For the sake of completeness, the court will consider those arguments as if they had been made here.

Brown first claims that the liquidated damages clause does not contain an impermissible option. He insists that a clause allowing the option of liquidated damages or other remedies is valid as long as those remedies are "of a kind and character other than money damages." *Morris v. Flores*, 174 Ill. App. 3d 504, 507, 528 N.E.2d 1013, 1015 (2d Dist. 1988).

Brown is correct as a general matter. But he has never suggested what "kind or character" the other remedies implied by the option language might be except actual damages. The nature of those other remedies is certainly not evident on the face of the purchase agreement itself, which contains only the option language and nothing else. *Cf. Phillips v. Feldott*, No. 96 C 7131, 1998 WL 60906, at *5 (N.D. Ill. Feb. 4, 1998) (finding valid liquidated damages clause that explicitly stated other remedy was "specific performance"); *Morris*, 174 Ill. App. 3d at 505, 528 N.E.2d at 1014 (holding valid clause permitting party liquidated damages "without prejudice to his other remedies" because the "other remedies" had to be something besides money damages). The clause in the purchase agreement here is not significantly different from the clause held invalid in *Catholic Charities*.

Brown next argues that the $833,00 liquidated damages amount is reasonable. He notes that Ron Douglass, Brown's agent, considered several factors that caused him to set the amount

---

[5] In February 2005, RERM and Kothari sought to contest the validity of the liquidated damages clause by moving for judgment on the pleadings on the question of its validity. The validity of the clause was fully briefed. The court denied the motion, not because the liquidated damages clause was valid, but because Rule 12(c) is not the proper vehicle for challenging the availability of a specific form of relief on an otherwise viable claim. *See Brown v. Real Estate Res. Mgmt., LLC (In re Polo Builders, Inc.)*, No. 04 B 23758, No. 04 A 4032, 2005 Bankr. LEXIS 631, at *5 (Bankr. N.D. Ill. April 18, 2005).

at five percent of the purchase price, or $833,000.

Perhaps so, but the point is irrelevant. Regardless what Douglass did or did not consider in drafting the liquidated damages clause, and regardless how long he may have mulled over the $833,000 amount before setting it down on paper, the clause he arrived at still has the flaws identified earlier. It still permits the same amount of damages, $833,000, regardless of the severity of the breach. Brown would be entitled to $833,000 even if RERM delivered the entire amount of the earnest money a day late.[6/] And it still permits Brown the option of taking the $833,000 or rolling the litigation dice and trying for something better.

Finally, Brown argues that the purchase agreement itself shows the parties agreed the $833,000 was a reasonable forecast of damages. He notes that the liquidated damages clause expressly deems the amount "fair and reasonable."

It does. But a contract's declaration that the damages amount constitutes "liquidated damages" and is "reasonable," though entitled to some weight, is not conclusive. *United Order of Am. Bricklayers v. Thorleif Larsen and Son, Inc.*, 519 F.2d 331, 333 (7th Cir. 1975); *M.I.G. Inves.*, 92 Ill. App. 3d at 406, 414 N.E.2d at 1386. In this case, that declaration is not enough to overcome the other problems with the clause.

In sum, even if summary judgment on liability could be awarded to Brown on his breach of contract claim, he could not receive liquidated damages because the liquidated damages clause in the purchase agreement is a penalty and unenforceable.

---

[6/]    Where an agreement states that time is of the essence, as the purchase agreement here does, even a single day's delay can constitute a material breach. *See Elda Arnhold and Byzantio, L.L.C. v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693, 704 (7th Cir. 2002).

### 4. Conclusion

The motion of plaintiff David R. Brown for partial summary judgment on Counts I-III of his complaint is denied. A separate order will be issued in accordance with this opinion.

Dated: May 24, 2006

                                              A. Benjamin Goldgar
                                              United States Bankruptcy Judge